JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
NICHOLAS D. FRAM (State Bar No. 288293)
nicholas.fram@mto.com
MADELYN CHEN (State Bar No. 346126)
madelyn.chen@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Plaintiff LinkedIn Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LinkedIn Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TopSocial24, SocialBD24, MD Raju Ahamed, Golam Mostafa, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT;**<br>**(2) FRAUD AND DECEIT (CAL. CIV. CODE §§ 1572, 1710);**<br>**(3) INTENTIONAL INTERFERENCE WITH CONTRACT.**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiff LinkedIn Corporation ("LinkedIn" or "Plaintiff") brings this Complaint against TopSocial24, SocialBD24, MD Raju Ahamed, Golam Mostafa, and DOES 1-10 (collectively, "Defendants") for injunctive relief and damages. LinkedIn alleges as follows:

1. From at least 2017 to present, Defendants have operated an unlawful business premised on deceiving LinkedIn and its members. On their own and through other go-betweens, Defendants sell inauthentic engagement—including fake followers, fake comments, fake likes, and fake connections—that fraudulently bolsters the members and companies that purchase Defendants' unlawful services. Defendants' actions violate the LinkedIn User Agreement, induce other LinkedIn members to breach the User Agreement, and constitute fraud. LinkedIn brings this lawsuit to stop Defendants' conduct, which harms LinkedIn by eroding the trust that lies at the core of LinkedIn's relationship with its members. LinkedIn also is entitled to damages as a result of Defendants' misconduct.

2. LinkedIn is a global online social network with a professional focus. It has over 850 million members in over 200 countries and territories around the globe. At the heart of LinkedIn's platform are its members. Members create profiles on LinkedIn's platform, which serve as their professional online identities. Members may also create company pages to create brand awareness or promote their companies on LinkedIn.

3. LinkedIn's User Agreement, to which every member must consent before creating a profile or engaging with others on LinkedIn, requires that all members use their real names and prohibits creating accounts using false information. This helps preserve LinkedIn's platform as a place where members can authentically interact and genuinely engage with other members, which, in turn, makes LinkedIn a place that people find valuable professionally and want to visit.

4. After accepting the User Agreement, members can engage with other member profiles and company pages on LinkedIn's website in multiple ways, including by posting content, "liking" or commenting on content posted by other members or companies, or by following or connecting with other members or companies with LinkedIn pages. Only members can engage with other members or companies in these ways on LinkedIn. LinkedIn publishes data about some

aspects of members' engagement, including, for example, the number of members who follow a company's page, or the number of likes that a post receives.

5. Defendants' conduct directly undermines LinkedIn members' trust by facilitating deceptive and inauthentic interactions on the platform. Defendants develop and deploy fake accounts for the purpose of misleading members—indeed, that is the value proposition that they are selling. For example, a LinkedIn company page that has a significant number of members following it appears to be a better prospect for a business opportunity or a job application than a company with few followers. Once many members have "liked" or commented on a page, the page gains even more attention and followers. Defendants' fake accounts and fraudulent engagement can distort engagement data and thus falsify the wisdom of crowds, drawing members' attention away from valuable content, contacts, and services that real people have actually liked or commented on, and toward accounts or content that have not garnered such authentic engagement, but have cheaply purchased fake influence. This deceptive conduct erodes the trust and goodwill of LinkedIn members.

6. Defendants are not shy about their unlawful conduct. TopSocial24 explicitly advertises "Company Page Followers, Profile Followers, Post views, [and] Post Like[s]" for sale, offering "LinkedIn Followers Cheap Price." Similarly, SocialBD24 sells "likes, followers, views, etc.," even noting that it can add this engagement gradually so that it appears authentic: "Instead of getting all 2000 likes at once, you can get 200 each day for 10 days." On information and belief, since 2021, Defendants have created and used over 400,000 fake LinkedIn accounts that have followed thousands of companies and members on LinkedIn. Their fake accounts were also used to generate over 350,000 inauthentic reactions to thousands of posts on LinkedIn.

7. By selling inauthentic engagement, Defendants' conduct undermines the integrity and effectiveness of LinkedIn's professional network by polluting it with thousands of fake member profiles and the inauthentic activity generated by those accounts. This in turn diminishes members' trust in LinkedIn's platform and harms the business that LinkedIn has worked hard to build. Members' willingness to engage on the platform is dependent on their trust that LinkedIn is

a safe and trustworthy community of real professionals.  Inauthentic activity on the platform, such as Defendants' artificial engagement, discourages members from sharing and gaining information from other members, or applying for jobs, which diminishes the value of the LinkedIn network.  If members doubt the authenticity of the interactions they have or observe on LinkedIn, they will be less willing to use the platform to connect with other members or seek economic opportunities.  Defendants' activities, if not enjoined, threaten ongoing and irreparable harm to LinkedIn, including to its reputation and substantial consumer goodwill.

## JURISDICTION AND VENUE

8. This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332. Plaintiff is a citizen of Delaware and California.  Upon information and belief, Defendants are citizens of Bangladesh.  The amount in controversy exceeds $75,000.

9. Venue is proper in this Court because Defendants contractually consented to venue in this District.  Defendants have consented to LinkedIn's User Agreement,[1] which contains a forum selection clause selecting this judicial district for resolution of all disputes between the parties.

10. Upon information and belief, Defendants have repeatedly, knowingly, and intentionally targeted their wrongful acts at LinkedIn, which is headquartered in this judicial district.  In addition, Defendants have consented to personal jurisdiction in this judicial district by consenting to the forum selection clauses in LinkedIn's User Agreement and Pages Agreement.

## INTRADISTRICT ASSIGNMENT

11. LinkedIn is headquartered in Sunnyvale, California, in Santa Clara County, which is where it suffered the harms Defendants have inflicted.  This case should therefore be assigned to the San Jose Division under Civil Local Rule 3-2(c).

## THE PARTIES

12. LinkedIn Corporation is a Delaware corporation with its principal place of business in Sunnyvale, California.

---

[1] https://www.linkedin.com/legal/user-agreement (last visited January 6, 2023).  Defendants agreed to substantially similar terms at the time they signed up for their LinkedIn accounts.

13. Defendant TopSocial24 is a website that is operated by Defendant Golam Mostafa, who is based in Bangladesh.

14. Defendant SocialBD24 is a website that is operated by Defendant MD Raju Ahamed, who is based in Bangladesh.

15. Defendant Golam Mostafa (also known as "Rony," "Freelancer Rony," and "Golam Mostafa Rony"), working through TopSocial24 (or one of his other affiliates, including "Working Group," "Working Gorup [sic]," "Working IT Solution," "Jessor Working Gorup [sic]," and "Learning Club") is the owner and operator of the TopSocial24 website. He is responsible in whole or in part for the wrongdoing alleged herein, and in his capacity as the administrator of TopSocial24.

16. Defendant MD Raju Ahamed (also known as "Jichan Ahamed," "Jichan Babu," and "Razu Ahamed"), working through SocialBD24 (or one of his other affiliates, including "Freedom IT Firm," "Working Group," "Working Gorup [sic]," "Jessor Working Gorup [sic]," or "Raju Social Workshop") is the owner and operator of the SocialBD24 website. He is responsible in whole or in part for the wrongdoing alleged herein, and in his capacity as the administrator of SocialBD24.

17. On information and belief, at all times material to this suit, each Defendant was the agent, employee, partner, alter ego, or coconspirator of and with the other Defendants, and the acts of each Defendant were in the scope of that relationship. In conducting the acts and omissions as alleged in this Complaint, each Defendant acted with the knowledge, permission, and the consent of each of the other Defendants.

18. LinkedIn reserves the right to amend its complaint should discovery reveal that Defendants are working in concert with one or more people or entities, herein sued under fictitious names of DOES 1-10.

## FACTS

### The LinkedIn Network

19. LinkedIn is a global online social network with a professional focus and over 850

million members worldwide. Through its proprietary platform, LinkedIn members are able to create, manage, and share their professional identities online, build and engage with their professional network, access shared knowledge and insights, and find business opportunities, enabling them to be more productive and successful.

20. At the heart of LinkedIn's platform are its members, who create individual profiles that serve as their professional profiles online. LinkedIn is available at no cost to any person who wishes to join, and who consents to the terms of LinkedIn's User Agreement, Privacy Policy, and Cookie Policy. As a condition of the User Agreement, members agree to abide by LinkedIn's Professional Community Policies.

21. LinkedIn members populate their profiles with a wide range of information concerning their professional lives, including summaries (narratives about themselves), job histories, skills, interests, educational background, professional awards, photographs, and other information. LinkedIn requires that each member's profile represents their real identity. As a professional community where members come to share and gain expertise, find employment, learn new skills, and connect to economic opportunity, it is critical that LinkedIn remains a place for authentic conversations with people who represent themselves accurately.

22. LinkedIn members can also create company pages to create brand awareness or promote their companies on LinkedIn. Company pages function similarly to members' profile pages, except that they are populated with information about companies instead of individuals. In addition to having information about companies, company pages can have followers, and companies can post content through these pages.

23. When LinkedIn members post content on LinkedIn's platform, other LinkedIn members may view that content and may choose to "like" it. Members may also "follow" other members, or company pages, and may interact with one another by commenting directly on posts created by others. For marketing and other commercial purposes, certain LinkedIn members strive to increase the number of followers, likes, and comments they receive, which can boost their visibility and reach on LinkedIn's platform.

**LinkedIn's Prohibitions on Fake Accounts and Other Unauthorized Conduct**

24. LinkedIn's User Agreement provides that members, users, and visitors to the LinkedIn website must abide by certain restrictions in accessing and using the website. The current version of the User Agreement, effective February 1, 2022, states that "You agree that by clicking 'Join Now' 'Join LinkedIn', 'Sign Up' or similar, registering, accessing or using our services …, you are entering into a legally binding contract with LinkedIn (even if you are using our Services on behalf of a company)."

25. Defendants MD Raju Ahamed and Golam Mostafa bound themselves to the User Agreement when they created their individual member profiles on LinkedIn. As demonstrated by the screenshot below, a prospective member registers for an account by providing a first name, last name, email address, and password. By clicking "Join Now," the prospective member "agree[s] to LinkedIn's User Agreement, Privacy Policy, and Cookie Policy," all of which are hyperlinked on the page.

26. TopSocial24 and SocialBD24 also have Company Pages on LinkedIn.[2] To create a Company Page, the administrator must check a box attesting that "I am the official representative

---

[2] Only LinkedIn members who have agreed to the LinkedIn User Agreement can create Company Pages.

of this company and have the right to act on behalf of my company in the creation of this page. The organization and I agree to the additional terms for Pages."

> ☐ I verify that I am an authorized representative of this organization and have the right to act on its behalf in the creation and management of this page. The organization and I agree to the additional terms for Pages.

27. The Pages Agreement states that "the LinkedIn User Agreement, Privacy Policy, and Cookie Policy apply to any use of our services," and contains hyperlinks to the pertinent documents.

28. Section 8.2 of the User Agreement prohibits those who are bound to the agreement from engaging in any of the following activities:

- "Creat[ing] a false identity on LinkedIn, misrepresent[ing] your identity, or creat[ing] a Member profile for anyone other than yourself (a real person)";
- "Rent[ing], leas[ing], loan[ing], sell[ing]/re-sell[ing] or otherwise monetiz[ing] the Services or related data or access to the same, without LinkedIn's consent."

29. Section 8.2(18) of the User Agreement also prohibits members from "viola[ting] the Professional Community Policies." The policies provide, in relevant part:

> **Do not create a fake profile or falsify information about yourself.** We don't allow fake profiles or entities. Do not post misleading or deceptive information about yourself, your business … [d]o not use or attempt to use another person's LinkedIn account or create a member profile for anyone other than yourself.

30. Defendants have been on notice of and agreed to abide by these and other prohibitions in registering for and using LinkedIn's services. As demonstrated below, Defendants have engaged in a systematic pattern of conduct in violation and breach of these terms, causing harm to LinkedIn.

**Defendants Sell Fake Engagement**

31. Defendants have engaged in and continue to engage in advertising inauthentic engagement on LinkedIn for sale, that they provide through their network of fake accounts. For example, TopSocial24's homepage advertises the opportunity to "Buy LinkedIn Followers."



32. TopSocial24's website also contains an extensive menu of fake engagement services for customers to buy, which includes fake company page followers, fake followers, and fake connections between members:



33. TopSocial24 advertises the ability to deploy its fake engagement services gradually, perhaps in the hopes of evading LinkedIn's technical defenses. It offers a "drip-feed" feature through which its customers can gradually add engagement over time, furthering members' impression that the engagement is genuine.

34. SocialBD24 advertises on its website similar features, including fake followers, fake post views, and fake likes.

[Screenshot of SocialBD24 website showing LinkedIn Service offerings:

| ID | Name | Rate Per 1000($) | Min / Max Order | Description |
|---|---|---|---|---|
| 2150 | Instagram - Custom Comments S1 ( Instant, Superfast, HQ, Add one comment per line ) | 7.15 | 5 / 100000 | Details |
| 1385 | LinkedIn Company Page Followers World Wide Profile/MAX1000 | 4.2 | 100 / 1000 | Details |
| 1383 | ✓LinkedIn Profile Followers USA/MAX1000 | 4.25 | 100 / 10000000 | Details |
| 1384 | LinkedIn Company {USA Profile Page} Followers=MAX-Unlimited | 4.5 | 100 / 100000000 | Details |
| 1396 | LinkedIn Photo/video Post Views S2 [ Start : 1-2hrs ] [ 5000-50k/day (Life Time Non-drop) | 4.7 | 500 / 1000000000 | Details |
| 1386 | LinkedIn Profile Followers {USA Profile}=MAX-Unlimited | 10 | 100 / 1000000000 | Details |
| 1403 | LinkedIn Followers (Profile or Company-Page) USA Service 400/500 Speed Reguler | 15 | 100 / 2147483647 | Details |
| 3934 | Linkedin Post Like | 20 | 100 / 1000 | Details |
]

35. Mostafa and Ahamed frequently work together when fulfilling orders for fake engagement, regardless of whether the order for fake engagement comes from TopSocial24, SocialBD24, or other websites that act as go-betweens for their fake accounts. LinkedIn has uncovered multiple instances of Defendants' illicit activity on LinkedIn's platform.

36. For example, in early 2021, LinkedIn noticed that a certain company page (for "Company 1") rapidly received several thousand new followers from accounts that had no clear affiliation with Company 1. LinkedIn investigated and found that over 24,000 fake accounts had recently started following Company 1, all of which LinkedIn was ultimately able to associate with

Defendant Mostafa. LinkedIn connected those 24,000 fake accounts with 16,000 additional fake accounts associated with Mostafa and restricted all 40,000 of these accounts.

37. In early 2022, LinkedIn became aware of a website selling inauthentic engagement. Further investigation revealed that the website was a go-between and that the inauthentic engagement came from a network of 154,000 fake accounts linked to Defendant Mostafa. LinkedIn restricted those 154,000 fake accounts.

38. In the summer of 2022, LinkedIn received a report about a surge in accounts that had begun to follow an Austrian company ("Company 2"). LinkedIn's investigation indicated that Company 2 had received over 1,500 fake followers within a few days, and that those fake accounts were linked to a network of approximately 18,000 additional fake accounts associated with Defendants Ahamed and Mostafa. LinkedIn restricted those fake accounts as well.

39. In total, LinkedIn has connected Defendants to over 400,000 fake accounts. While LinkedIn's technical measures have been able to restrict, on information and belief, the vast majority of Defendants' fake accounts, Defendants remain undeterred and continue to create additional fake accounts and sell inauthentic engagement through that network of fake accounts. Because Defendants employ technical means to mask their fake accounts, concealing their illicit activity, the true extent of Defendants' conduct undoubtedly exceeds what LinkedIn describes herein.

**Defendants Have Caused Past and Threaten Ongoing Injury to LinkedIn**

40. By engaging in the activities described above, Defendants have caused, and if not halted will continue to cause, ongoing and irreparable harm to LinkedIn, in a variety of ways.

41. Defendants have created and continue to create an inauthentic experience for members who used, viewed, and relied on Defendants' false engagement, damaging the experience that members have on LinkedIn's platform and, in turn, harming LinkedIn's business. LinkedIn has worked hard to build a platform that is composed of real people and for real people, not fake accounts controlled by bots. As noted above, certain LinkedIn members use the platform with the specific intention to accrue engagement from other members for commercial and marketing

purposes. Moreover, the world's professionals use LinkedIn with the expectation that its contents are accurate and its user profiles are legitimate and belong to real people. Defendants' conduct undermines these expectations by polluting the platform with fake member profiles and inauthentic engagement. Defendants' fake accounts and fraudulent engagement draws member attention away from valuable content that real people have engaged with and toward accounts or content that have decided to cheat and purchase fake influence. LinkedIn will suffer ongoing and irreparable harm to its consumer goodwill and trust, which LinkedIn has worked hard for years to earn and maintain, if Defendants' conduct continues.

42. LinkedIn has suffered additional harms from Defendants' conduct, including but not limited to LinkedIn's expenditure of time and employee resources necessary to detect, investigate, and respond to Defendants' misconduct. LinkedIn has expended significant human, financial, and technical resources, including hundreds of hours of employee time, investigating and responding to Defendants' unlawful activities, including in its efforts to identify, analyze, and stop Defendants' fraudulent and injurious activities.

## FIRST CLAIM FOR RELIEF

**Breach of Contract**

43. LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

44. Use of the LinkedIn website and use of LinkedIn services are governed by and subject to the User Agreement.

45. LinkedIn members are presented with the User Agreement and must affirmatively accept and agree to the User Agreement to register for a LinkedIn account.

46. At all relevant times, LinkedIn also prominently displayed a link to the User Agreement on LinkedIn's homepage.

47. Defendants were on notice of and agreed to the User Agreement when they created their member profiles on LinkedIn and extensively used the LinkedIn website, including through the creation and ongoing maintenance of the TopSocial24 and SocialBD24 Company Pages.

48. The User Agreement is enforceable and binding on Defendants.

49. Defendants repeatedly accessed the LinkedIn website with knowledge of the User Agreement and all of its prohibitions. Despite their knowledge of the User Agreement and its prohibitions, Defendants accessed and continue to access the LinkedIn website to use their network of fake accounts to provide inauthentic engagement.

50. Defendants' actions, as described above, have willfully, repeatedly, and systematically breached the User Agreement, including its provisions prohibiting providing false information to create accounts.

51. LinkedIn has performed all conditions, covenants, and promises required of it in accordance with the User Agreement.

52. Defendants' conduct has damaged LinkedIn, and caused and continues to cause irreparable and incalculable harm and injury to LinkedIn.

53. LinkedIn is entitled to injunctive relief, compensatory damages, and/or other equitable relief.

## SECOND CLAIM FOR RELIEF

**Fraud and Deceit (Common Law, Cal. Civ. Code §§ 1572, 1710)**

54. LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

55. Defendants' acts, as alleged, constitute fraud on LinkedIn. Defendants falsely represent their identities to LinkedIn in order to create fake accounts, gaining access to the platform.

56. Defendants are aware that their representations are false. They know that they are posing as others or as people who are not real, and they know that LinkedIn has relied on these false representations to extend access to its platform to Defendants.

57. Defendants specifically intended that LinkedIn would rely on their false representations, granting Defendants' access to its platform and LinkedIn's engagement services.

58. In addition, LinkedIn relies on members to accurately portray themselves on LinkedIn's platform in order to maintain an environment where members feel safe sharing

personal and career information.  Reliance on accurate representations by its members is critical to the trust and goodwill that LinkedIn has worked hard to create.  LinkedIn's reliance is justifiable.

59. As detailed above, Defendants' behavior has damaged and threatens ongoing injury to LinkedIn if not enjoined.  LinkedIn's reliance on Defendants' false representations is a substantial factor in causing LinkedIn's harm.

### THIRD CLAIM FOR RELIEF

**Intentional Interference with Contract**

60. LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

61. LinkedIn requires all members to consent to the User Agreement to open a LinkedIn account, and to access and use LinkedIn's platform and services.

62. Defendants have had notice of the User Agreement, including without limitation, through their own creation of accounts and Company Pages on LinkedIn's platform.

63. Defendants have intended to disrupt the performance of these contracts, and have prevented the performance of these contracts, by encouraging and inducing LinkedIn members to purchase inauthentic engagement in violation of LinkedIn's User Agreement, including terms which prohibit members from posting misleading and deceptive information on LinkedIn's platform, and from purchasing services like those Defendants offer in order to mislead other members on the platform.  In particular, Defendants have encouraged and induced members to violate LinkedIn's Professional Community Policies, which are incorporated into the User Agreement, and prohibits members from defrauding other members.

64. Defendants' conduct is fraudulent and therefore independently wrongful.

65. As a result of Defendants' actions, LinkedIn has been harmed, and Defendants' conduct was a substantial factor in causing LinkedIn's harm.

### PRAYER FOR RELIEF

WHEREFORE, LinkedIn prays that judgment be entered in its favor and against Defendants, as follows:

1. A permanent injunction enjoining and restraining all Defendants, their employees,

representatives, agents, and all persons or entities acting in concert with them during the pendency of this action and thereafter perpetually from accessing or using LinkedIn's website, servers, systems, and any data displayed or stored therein;

    2.    An order requiring Defendants to

        a.    provide information sufficient to identify all of the accounts that Defendants have used or could use to generate inauthentic engagement;

        b.    state the money Defendants have received from the sales they have made of such inauthentic engagement;

    3.    An award to LinkedIn of damages, including, but not limited to, compensatory, statutory, enhanced damages, profits of Defendants, and/or punitive damages, as permitted by law;

    4.    An award to LinkedIn of its costs of suit, including, but not limited to, reasonable attorney's fees, as permitted by law; and

    5.    Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

LinkedIn hereby demands a jury trial of all issues in the above-captioned action that are triable to a jury.

DATED: January 10, 2023        MUNGER, TOLLES & OLSON LLP

By:  */s/ Jonathan H. Blavin*
/s/ JONATHAN H. BLAVIN
Attorney for Plaintiff
LinkedIn Corporation